**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**SCOTT HUDSON,**

     **Plaintiff,**

**v.**                                          **District Ct Case No.: 3:20-cv-5875**
                                          **Circuit Ct Case No.: 2020 CA 000665**

**UNIVERSITY OF WEST FLORIDA**
**BOARD OF TRUSTEES,**

     **Defendant.**
_____/

**NOTICE OF REMOVAL**

**TO:  THE UNITED STATES DISTRICT COURT FOR THE NORTHERN**
**DISTRICT OF FLORIDA, THE CIRCUIT COURT OF THE 1ST**
**JUDICIAL CIRCUIT, IN AND FOR ESCAMBIA COUNTY, FLORIDA,**
**AND ALL PARTIES AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant University of West Florida

Board of Trustees ("UWF"), pursuant to N.D. Fla. Loc. R. 3.1(B), invokes

the removal jurisdiction of the United States District Court for the Northern

District of Florida, for the removal of the above-captioned matter, currently

pending as Civil Action Number 2020 CA 000665 in the Circuit Court in and

for Escambia County, Florida, to the United States District Court for the

Northern District of Florida, Pensacola Division. UWF files this Notice

without waiving any defenses, exceptions, or obligations that may exist in

its favor in State or Federal Court. UWF bases its removal on the following grounds:

1.    This Notice of Removal is timely pursuant to 28 U.S.C. § 1446 in that it is being filed within thirty (30) days after UWF was formally served with the summons and complaint.

2.    The Circuit Court in and for Escambia County, Florida is located within the Northern District of Florida, Pensacola Division.

3.    Defendant removes this action to this Court based on federal jurisdiction, pursuant to 28 U.S.C. § 1441(c).

4.    Plaintiff, per the original complaint, is a resident of Florida.

5.    The United States District Court has jurisdiction over the parties in this litigation, pursuant to 28 U.S.C. § 1331, and this case may be removed pursuant to 28 U.S.C. § 1441. Because the original case was filed in Escambia County, Florida, venue in the Pensacola Division is appropriate.

6.    A copy of the Complaint is attached as Exhibit "A."

7.    UWF will give written notice of this Removal to all parties as required by law.

8.    A copy of this Notice will be served with the Clerk of the Circuit Court in and for Escambia County, Florida, as provided by law.

2

WHEREFORE the removing party, UWF, requests the above-styled action be removed from the Circuit Court in and for Escambia County, Florida, to this Honorable Court. UWF demands a jury trial on those issues so triable.

Respectfully submitted,

/s/ Larry A. Matthews
**Larry A. Matthews**
Florida Bar No.:  0339601

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been furnished to Cecile M. Scoon, 25 East 8th Street, Panama City, FL 32401 by electronic mail this 13th day of October, 2020.

/s/ Larry A. Matthews
**Larry A. Matthews**
Florida Bar No.:  0339601
**Raymond F. Higgins, III**
Florida Bar No.:  0153117
MATTHEWS & HIGGINS, LLC
114 East Gregory Street (32502)
Post Office Box 13145
Pensacola, FL  32591-3145
(850) 434-2200 Telephone
(850) 434-2600 Facsimile
E-Mail lmatthews@matthewshigginslaw.com
          rhiggins@matthewshigginslaw.com
Attorneys for Defendant UWF

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
ESCAMBIA COUNTY, FLORIDA, CIVIL DIVISION**

Scott Hudson,
    **Plaintiff**

V.                                          **Case No. 2020 CA 000665**

**University of West Florida Board of Trustees**
    **Defendant.**

---

## PETITION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE OTHER RELIEF

COMES now, Plaintiff, Scott Hudson, by and through his undersigned attorney and respectfully moves this Court for an Order compelling Arbitration against the Defendant, University of West Florida, "UWF," pursuant to Section 682.03 Florida Statutes and Title 9 of USC Code and other relief. Plaintiff would show:

### ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff was employed by Defendant as an acting professor at UWF from 2015-2017.

2. Plaintiff performed his duties well.

3. All actions and omissions pertinent to this action occurred in Escambia County, Florida.

4. This court has jurisdiction over the parties and subject matter pursuant to FS.682 et seq and 42 USC 1983.

5. The Plaintiff and the Defendant were bound by a Collective Bargaining Agreement (CBA) that provided for arbitration of disputes in employment. A copy of the pertinent portions of the Agreement is attached and incorporated herein as Ex 1.

**EXHIBIT "A"**

6.  The Bargaining entity representing employees in a Union at the UWF was United
    Faculty of Florida (UFF)

7.  Plaintiff was not a member of UFF union.

8.  Plaintiff presented a play and the syllabus about the play to the Theater Department at
    UWF.

9.  The syllabus and the play were pre-approved by UWF.

10. Plaintiff warned students that the play contained adult content and that students should
    let him know if they were ever uncomfortable.

11. No students made any remarks or complaints about being uncomfortable.

12. In the summer/fall of 2016, Plaintiff told his supervisor that he had a learning disability
    and needed some additional teaching support with his large classes.

13. Instead of providing the requested accommodations, Defendant gave Plaintiff more
    students with less teaching assistance.

14. Shortly after Plaintiff sought reasonable accommodations from the school, Plaintiff's
    supervisor's attitude changed towards him drastically and he became more distant and
    critical and less supportive.

15. Plaintiff was told on or about January 2017 that UWF would not renew his contract for
    the following year.

16. No reason was given for the non-renewal notice.

17. Pursuant to his rights under the CBA, Plaintiff requested in writing that a reason be
    given for the non-renewal. CBA Para13.2(b)(2)(d).

18. UWF failed to provide a specific reason for the Notice of Non-renewal to Plaintiff.

19. A student made a complaint about Plaintiff.

20. Plaintiff's Dean made a remark that the student's complaint was one of the reasons that Plaintiff was going to be non-renewed.

21. The complaint that the Dean was relying upon was not actually about Plaintiff but pertained to another professor.

22. Plaintiff chose to be represented by private counsel and not to use the union representative in his grievance against the University as is allowed by the CBA. Para 22.3 Representation.

> Para 22.3 Representation provides:
>
> (a) The UFF will have the exclusive right to represent any faculty member in a grievance filed under this Agreement, **unless the faculty member elects self-representation or to be represented by legal counsel. (Emphasis added)**

23. The bargaining agreement gave Plaintiff the right to be represented by the union or to be represented by a person of his choosing.

24. Plaintiff chose the undersigned attorney to represent him in the grievance proceeding.

I.    ACTION TO COMPEL ARBITRATION

25. On or about February 2017, Plaintiff filed a written request for a grievance and a formal request for the basis of the reason for the nonrenewal as provided for in the Unit Agreement. (A copy of the Formal Request for a Grievance and Request for a reason for

the Notice of Non-Renewal is attached and incorporated herein as Exhibit 2 and 3

respectively).

26. UWF refused to provide a specific reason for the non-renewal, thereby making it

impossible for Plaintiff to properly defend himself against the general allegations made

against him that he was not suitable to UWF. (A copy of the UWF response is attached

and incorporated herein as Exhibit 4)

27. Plaintiff grieved that he was denied his rights under the arbitration agreement and that

his rights to be:

i.)informed of the reason for a non-renewal, and

ii.) to be free to use his academic judgement, were violated.

28. Plaintiff has arbitrable issues under the CBA.

29. Plaintiff did not waive his right to arbitration.

30. Plaintiff adhered to all of the steps required for the grievance to reach the final decision.

31. After the final decision was rendered in favor of the UWF, Plaintiff requested formal

arbitration. ( A copy of the Request for Arbitration is attached and incorporated herein

as Exhibit 5)

32. Defendant stated that it would not provide arbitration because Plaintiff had not sought

permission of the bargaining unit manager. ( A copy of the UWF Response and denial of

Arbitration is attached and incorporated herein as Exhibit 6)

33. Plaintiff had inquired of the bargaining manager of UFF whether he needed to get

involved in the grievance and the bargaining manager declined as Plaintiff had chosen

representation outside of the union.

34. Plaintiff further inquired of the UFF bargaining manager whether he needed to sign the Notice of Arbitration.

35. The UFF bargaining manager stated that he did not need to sign the Notice of Arbitration because UFF was not representing Plaintiff.

36. Plaintiff was directed to cross out the line for the signature of a UFF representative on the Notice of Arbitration and Plaintiff did so.

37. Plaintiff contends that Defendant cannot deny Plaintiff the right to arbitration when Plaintiff sought arbitration without the assistance of the union as that was his right to do so as stated in the agreement.

38. Defendant contends that the agreement's statement that the bargaining manager had to sign off on the request for a grievance would force the Plaintiff to accept the representation of the union that Plaintiff chose not to do as was allowed under the agreement.

39. Furthermore, the bargaining unit manager said that his involvement in the Notice of Arbitration was not necessary.

40. Plaintiff and his counsel contacted the bargaining unit manager by phone and email and was told that there was no need for the bargaining unit representative to sign any Notice of Arbitration to be able to obtain arbitration. ( A copy of the email correspondence between the Union representative and Plaintiff's Counsel is attached and incorporated herein as Exhibit 7).

41. Plaintiff should be able to rely upon the statement of the bargaining unit manager who had real and apparent authority under the CBA to make that statement.

42. Defendant cannot assert the right of another that waived that right.

43. The UFF was informed about the content of Plaintiff's grievance and chose to not get involved.

44. UFF declined to represent Plaintiff solely because he was not a union member.

45. UFF was not harmed by its own decision to decline representation of Plaintiff.

46. UWF was not prejudiced in any way by Plaintiff representing himself in the grievance and in not having a UFF representative sign off on the Request for an Arbitration.

47. All of Plaintiff's issues raised in his grievance are issues that are subject to the bargaining agreement and the arbitration agreement.

48. Any question about whether an issue is arbitral should be determined in arbitration by the arbitrator.

49. The CBA itself states that "the arbitrator will rule upon jurisdictional issues within ten days of the hearing." CBA Para 22.5 (g)(3)(c).

50. The authority of the Arbitrator is stated in CBA Para 22.5(g)(4)(a).

> Authority of the Arbitrator.
>
> a. The arbitrator will have no authority to add to, subtract from, alter, change, or modify any of the provisions of this agreement. **Arbitration will be confined solely to the application/and or interpretation of this Agreement and the precise issue(s) submitted for arbitration**….(Emphasis added)

51. Plaintiff has been financially and emotionally harmed by the decision to non-renew and the decision to refuse to arbitrate Plaintiff's claims

52. Plaintiff is obligated to pay the undersigned attorney reasonable attorneys fees and to pay the costs if bringing this action.

53. Defendant should be liable for the harms caused by its actions as stated above.

WHEREFORE, Plaintiff prayerfully seeks the court to issue an order

a. compelling arbitration.

b.  compelling UWF to state with particularity the basis of its decision to

non-renew.

c.  Awarding reasonable damages, and

d.   Awarding reasonable attorneys' fees.

e.  And for any other remedy deemed to be fair and reasonable.


II.     FIRST AMENDMENT VIOLATION-

ACADEMIC FREEDOM ,42 USC 1983


In the alternative, Plaintiff seeks a judicial remedy for the Constitutional violations.

52. Plaintiff realleges and incorporates para 1-44 of Count I.

53. Plaintiff had an Academic Freedom and First Amendment right to teach the materials

that he thought were suitable.

54. The language that Plaintiff used to teach his class that was objected to by UWF was

germane to the play that was being taught that dealt with social issues involving sex,

relationships, between individuals and society.

55. Language used by professors that is germane to the class that they are teaching is public

speech and therefore protected by the 1rst Amendment and Academic Freedom

Protections.

56. Plaintiff's supervising Dean and the Theater Faculty Head had approved the play and the

syllabus that notified students that the play had an adult theme.

57.  A student complained about the play and language Plaintiff used in teaching the play.

58.  UWF decided to non-renew Plaintiff's contract in part because of the student's complaint.

59.  Defendant UWF abridged Plaintiff's First Amendment Rights of Free Speech and Academic Freedom when it retaliated against Plaintiff for using adult language when teaching the play.

60.  Defendant's agents, the supervising Dean and Faculty Head were acting in their official capacities as agents of UWF when they determined that Plaintiff's contract should not be renewed.

61.  Defendant's agents, the supervising Dean and Faculty Head were acting under color of state law when they determined that plaintiff 's contract would not be renewed.

62.  Defendant UWF, acting through its agents, violated Plaintiff's 1rst Amendment rights in violation of 42 USC 1983.

63.  UWF has a policy and custom of retaliating against Professors who assert their 1rst Amendment and Academic freedom rights with public speech.

64.  Defendant's actions in retaliating and non-renewing Plaintiff's contract would deter exercise of First Amendment rights and Academic Freedom of a person with ordinary sensibilities.

65.  Plaintiff's Academic Freedom and First Amendment Rights were abridged and harmed by the actions of UWF.

66.  Plaintiff 's right to Academic Freedom under the bargaining agreement were harmed by Defendant's actions.

67.  Plaintiff has been financially and emotionally harmed by the decision to non-renew and the decision to refuse to arbitrate Plaintiff's claims.

68.  Plaintiff is obligated to pay the undersigned attorney reasonable attorneys' fees and to pay the costs of bringing this action.

69.  Defendant should be liable for the harms caused by its actions as stated above.

WHEREFORE, Plaintiff prayerfully seeks injunctive relief, and attorneys' fees and costs, and other remedy deemed to be fair and reasonable for bringing this action. Plaintiff demands a jury trial.

## III BREACH OF CONTRACT/PROMISSORY ESTOPPEL

In the alternative, Plaintiff seeks a judicial remedy under contract law,

70.  Plaintiff realleges and incorporates para 1-44 of Count I.

71. In the CBA, UWF made promises to Plaintiff that he could represent himself through the grievance/arbitration proceedings.

72. Plaintiff relied to his detriment upon the promises which were contract provisions that stated that he could choose his own legal representative as stated in para  22.3  of the CBA.

73. Plaintiff was reasonable in relying upon the contract provisions that stated that he could select his own representative

74. Plaintiff relied on the paragraph 22.3 of the CBA which allowed him to select his own legal representative.

74. Plaintiff reasonably relied upon the statement of the UFF Representative who stated that his signature was not needed on the Notice of Intent to Proceed to Arbitration.

75. Plaintiff was harmed by his reasonable reliance on Defendant's promises when his request for arbitration was denied.

76. UWF is estopped from requiring Plaintiff to have the signature of a UFF representative on Plaintiff's Notice of Intent to Proceed to Arbitration.

77. Plaintiff, as teacher at UWF, was a known and intended beneficiary of the CBA.

78. The contract or CBA gave rights to Plaintiff that allowed him to represent himself or seek his own legal counsel outside of UFF.

79. There was consideration rendered for the promises to abide by the CBA in that Plaintiff received a job and UWF received the services of a professor.

80. UWF breached that promise to allow Plaintiff to have his own counsel in the grievance procedure when it denied Plaintiff the ability to go to arbitration.

81. Pursuant to the CBA, Plaintiff had a right to receive a written statement from the Defendant about the basis for the decision not to appoint.

82. Defendant breached the CBA when it failed to provide Plaintiff with a written statement about the basis for the decision not to appoint.

83. Plaintiff was harmed by that breach in that he was not able to fully defend himself against the non-reappointment in the grievance procedure when UWF refused to provide a written statement for the decision not to appoint.

84. The CBA states that an employee may choose their own legal counsel for the grievance procedure.

85. The grievance procedure includes arbitration as indicated in the CBA.

86. Defendant should not be allowed to force the Plaintiff to accept the representation of UFF.

87. Plaintiff should not be denied access to arbitration when the UFF declined to represent him solely because Plaintiff was not a union member.

88. Plaintiff was harmed by Defendant's breaches of the CBA as stated above.

89. Defendant UFF is estopped from preventing Plaintiff to have his choice of counsel.

90. UWF approved Plaintiff's syllabus and choice of teaching a play.

91. Plaintiff relied to his detriment on UWF's approval of the syllabus and teaching the play.

92. Relying on UWF's promise that the play was acceptable, Plaintiff taught the play which required using adult language in the classroom.

93. Plaintiff was harmed by UWF's non-renewal after it determined that the play and language used in teaching the play was not acceptable after the approval had already been given.

94.  Defendant UWF is estopped from issuing a non-renewal to Plaintiff for teaching a play and using language in class that was germane to the play that had already been approved by UWF.

95. Plaintiff is obligated to pay the undersigned attorney reasonable attorney's fees and to pay the costs if bringing this action.

96. Defendant should be liable for the harms caused by its actions as stated above.

WHEREFORE, Plaintiff prayerfully seeks compensatory damages, injunctive relief, and attorneys' fees and costs, and any other remedy deemed to be fair and reasonable for bringing this action. Plaintiff demands a jury trial.

Signed this 22 day of May 2020.

/s/ Cecile M. Scoon, Esq.
Cecile M. Scoon, Esq.
FL Bar # 834556
25 East 8th Street
Panama City, FL 32401
Telephone: (850) 769-7825
Fax: (850) 215-0963
Attorney for Plaintiff
Scott Hudson

IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
ESCAMBIA COUNTY, FLORIDA, CIVIL DIVISION

Scott Hudson,
Plaintiff

Case No. 2020 CA 665

V.

University of West Florida Board of Trustees,          JURY TRIAL
DEMAND
Defendant.

---

NOTICE OF FILING EXHIBITS

Comes now Plaintiff and files Exhibits referred to in his Complaint. These Exhibits are

hereby incorporated into the Complaint:[1]

1. Pertinent portions of Collective Bargaining

2. Request for a Grievance,

3. Request for Reason Non-renewal,  March 2017

4. UWF Response for Reason for Non-renewal, Feb 2017

5. Notice of Arbitration, Oct 2017

6. UWF Response, Dec 2017

7. Email Correspondence

---

[1] Plaintiff attempted to file the Exhibits with the Complaint but they were too large to be accepted and had to be scanned and submitted again.

Submitted by Attorney for Plaintiff, on July 2, 2020,

/s/ Cecile M. Scoon, Esq.
Cecile M. Scoon, Esq.
FL Bar # 834556
25 East 8th Street
Panama City, FL 32401
Telephone: (850) 769-7825
Fax: (850) 215-0963
Attorney for Plaintiff
Scott Hudson

# ARTICLE 22
## GRIEVANCE PROCEDURE AND ARBITRATION

**22.1 Policy/Informal Resolution.** The parties agree that all problems should be resolved, whenever possible, before the filing of a grievance but within the time limits for filing grievances stated elsewhere in this Article, and encourage open communication between administrators and faculty so that resort to the formal grievance procedure will not normally be necessary. The parties further encourage the informal resolution of grievances whenever possible. At each step in the grievance process, participants are encouraged to pursue appropriate modes of conflict resolution. The purpose of this Article is to promote a prompt and efficient procedure for the investigation and resolution of grievances. The procedures hereinafter set forth will be the sole and exclusive method for resolving the grievances of faculty as defined herein.

The University of West Florida and the UFF recognize the benefits of having grievances resolved in a way that ensures a timely and equitable outcome based on good faith efforts on the part of both parties. The notion of a timely resolution implies that at the first and every level of the process, both parties establish resolution of the grievance as the highest priority. The notion of an equitable outcome implies that both parties commit to a sustained and in-depth analysis of the dispute and associated evidence and documentation. The parties agree that a joint statement from both parties narrowing the issues is advisable wherever possible. Both parties acknowledge the benefits of having early and equitable resolution of disputed issues.

**22.2 Resort to Other Procedures.**

(a) It is the intent of the parties to provide in this Article a reasonable opportunity for resolution of a dispute through the grievance procedure and arbitration process.

(b) Except as noted below, if prior to seeking resolution of a dispute by filing a grievance according to this Article or while the grievance proceeding is in progress, a faculty member requests, in writing, resolution of the matter in another forum, whether administrative or judicial, the University will have no obligation to entertain or proceed further with the matter pursuant to this grievance procedure.

(c) As an exception to this provision, a grievant may file an EEOC charge while the grievance is in progress when such filing becomes necessary to meet federal filing deadlines pursuant to 42 U.S.C. §2000e et seq.

(d) Further, since the parties do not intend that this grievance procedure be a device for appellate review, the President's response to a recommendation of a hearing officer or other individual or group having appropriate jurisdiction in any other procedure will not be an act or omission giving rise to a grievance under this procedure.

**22.3 Representation.**

(a) The UFF will have the exclusive right to represent any faculty member in a grievance filed under this Agreement, unless the faculty member elects self-representation or to be represented by legal counsel. (NOTE: If the grievant elects to be represented by counsel, it is likely that the University will also elect to have counsel present.)

(b) If a faculty member elects not to be represented by the UFF, the University will promptly inform the UFF grievance representative in writing of the grievance.

(c) No resolution of any individually processed grievance will be inconsistent with the terms of this Agreement and for this purpose the UFF will have the right to have an observer present at all

Ex 1

HUDSON   CBA

meetings called for the purpose of discussing such grievance and will be sent copies of all decisions at the same time as they are sent to the other parties.

**22.4 Definitions and Forms.** As used herein:

(a) The term "grievance" will mean a dispute filed on a form referenced in section 22.4(d) concerning the interpretation or application of a specific term or provision of this Agreement, subject to those exclusions appearing in other Articles of the Agreement.

(b) The term "grievant" will mean the UFF, a faculty member, or a group of faculty members when a grievance has been filed in a dispute over a provision of this Agreement. A grievance filed by the UFF which alleges a violation of its rights by the University will be initiated at Step 2.

(c) The parties may agree to consolidate grievances of a similar nature to expedite the review process. In a consolidated grievance, one Appendix "C," "D," or "E," as appropriate, may be attached, bearing the signatures of the grievants.

(d) Grievance Forms. Each grievance, request for review, and notice of arbitration must be submitted in writing on the appropriate form attached to this Agreement as Appendices "C," "D," or "E," as appropriate, and will be signed by the grievant. The aforementioned grievance forms, as well as Appendix "H," may be filed by means of personal delivery, fax, United States mail, or any other recognized means of delivery EXCEPT electronic mail.

**22.5 Grievance Procedure.**

(a) This grievance procedure will be the sole review mechanism for resolving disputes regarding rights or benefits which are provided exclusively by this Agreement. Consequently, the filing of a grievance constitutes a waiver of any rights to judicial review of agency action pursuant to Chapter 120, Florida Statutes, or to the review of such actions under University procedures which may otherwise be available to address such matters.

(b) Filing Grievance Forms.

(1) A grievance will be filed with the Provost or representative at Step 1, or in the case of a grievance initiated at Step 2, with the President or representative.

(2) The grievant may amend the Appendix "C" form one time, either prior to the Step 1 meeting for all grievances filed at Step 1, or prior to the Step 2 review for all grievances filed directly at Step 2.

(3) Only those acts or omissions and sections of the Agreement identified at the initial filing, or the initial filing as amended, may be considered at subsequent steps.(4)

(c) Time Limits

(1) The grievance will be filed within thirty (30) days following the act or omission complained of, or the date on which the grievant knew or reasonably should have known of such act or omission, if that date is later.

(2) Thirty (30) days will be determined by a date stamp affixed by the office receiving the grievance, if hand delivered; or by the date recorded on the fax by the recipient's fax machine, if filed by fax; or by the postmark, if the grievance is mailed. The office receiving the grievance will send a copy of the date stamped document to the grievant or the grievant's representative within three (3) working days.

(3) If there is difficulty in meeting the time limit, the UFF representative may sign the grievance form for the grievant; however, the grievant's signature will be provided prior to the Step 1 meeting or Step 2 review if filed directly at Step 2.

(4) A faculty member may seek redress of alleged salary discrimination by filing a grievance under the provisions of this Article. An act or omission giving rise to such a grievance may be the faculty member's receipt of his or her pay or pay notification for the first full pay period in which the salary increases referenced in Article 25 (Salaries) are reflected.

(5) Time limits contained in this Article may only be extended by mutual agreement, in writing, of the University and the UFF. Likewise, steps in the grievance procedure may be waived by mutual agreement, in writing, of both parties.

(6) Time periods between semesters, when regular classes are not scheduled to be held, will not be counted toward time limits for the initial filing of a grievance or for grievance processing. The suspense period will begin at the end of the last day of the final exam period and will end on the first day of regularly scheduled classes. The parties may, by mutual agreement, continue processing a previously filed grievance during a suspense period.

(7) Upon the failure of the University to provide a decision within the time limits provided in this Article, the grievant or the UFF, where appropriate, may appeal to the next step.

(8) Upon the failure of the grievant or the UFF, where appropriate, to file an appeal within the time limits provided in this Article, the grievance will be deemed to have been resolved by the decision at the prior step.

(d) Postponement Seeking Informal Resolution.

(1) The grievant may, in the written grievance at the initial filing (Step 1 or Step 2), request the postponement of any action in processing the grievance formally for a period of up to thirty (30) days. The initial request will be granted. During this period efforts to resolve the grievance informally will be made.

(2) Upon the grievant's written request, additional extensions should be granted, unless to do so would impede resolution of the grievance.

(3) Upon request, the Provost or designee may, during the postponement period(s), arrange an informal meeting between the appropriate administrator and the grievant. If the grievance is initially filed at Step 2, the President or representative will meet informally with the UFF, if the UFF so requests, during the postponement period.

(4) The grievant will have the right to representation by the UFF during attempts at informal resolution of the grievance.

(5) The grievant may, at any time, terminate the postponement period by giving written notice to the Provost or representative (if the grievance is initially filed at Step 1) or the President or representative (if the grievance is initially filed at Step 2) that the grievant wishes to proceed with the Step 1 meeting (or Step 2 meeting for grievances initially filed at Step 2).

(6) If the grievance is resolved informally during the postponement period or any extensions thereof, the grievance is deemed to be immediately withdrawn. The grievant or the grievant's representative will notify the Provost's office or the President's office, as appropriate, in writing that the grievance is withdrawn within three (3) working days.

(7) In the case of a grievance filed pursuant to the Expedited Grievance Procedure referenced in section 22.16, the postponement period will be no more than seven (7) days unless the faculty member and the University agree otherwise.

(e) Step 1.

(1) Meeting.

a. The Provost or representative and the grievant and the grievant's representative will meet no later than thirty (30) days following (a) receipt of the grievance if no postponement is requested, (b) receipt of written notice that the grievant wishes to proceed with the Step 1 meeting, if a

postponement was requested, or (c) expiration of the postponement period or any extensions thereof without withdrawal of the grievance.

b. In advance of the Step 1 meeting, the grievant will have the right, upon written request, to a copy of any identifiable documents relevant to the grievance.

c. At the Step 1 meeting, the grievant will have the right to present any evidence in support of the grievance, and the grievant and/or the UFF representative or the grievant's legal counsel (if selected pursuant to section 22.3) and the Provost or representative will discuss the grievance.

(2) Decision.

a. The Provost or representative will issue a written decision, stating the reasons for the decision, within thirty (30) days following the conclusion of the final meeting. The Provost will distribute the written decision to the grievant, the grievant's representative, and all parties required to take action as a result of the decision.

b. Thirty (30) days will be determined by a date stamp affixed by the office receiving the written decision, if the decision is hand delivered, or the postmark, if the decision is mailed.

c. The grievant, if self-represented or the grievant's Step 1 representative will send a copy of the date stamped document to the Provost or representative within three (3) working days.

d. All documents referred to in the decision and any additional documents presented by the grievant will be attached to the decision, together with a list of these documents.

e. A copy of the decision will be sent to the UFF if the grievant elected self-representation or representation by legal counsel.

(f) Step 2.

Step 2 involves a review of Step 1 decisions, as well as those disputes that have been filed directly with the President by the UFF.

(1) Initial Meeting for Grievances Initially Filed at Step 2.

a. The President or representative and the UFF will meet no later than thirty (30) days following (a) receipt of the grievance if no postponement is requested, (b) receipt of written notice that the UFF wishes to proceed with the Step 2 meeting, if a postponement was requested, or (c) expiration of the postponement period or any extensions thereof without withdrawal of the grievance.

b. In advance of the Step 2 meeting, the UFF will have the right, on written request, to a copy of any identifiable documents relevant to the grievance.

c. At the Step 2 meeting, the UFF will have the right to present any evidence in support of the grievance, and the UFF and the President or representative will discuss the grievance.

(2) Review of Step 1 Decision, for Grievances Initially Filed at Step 1.

a. If the grievance is not satisfactorily resolved at Step 1, the grievant may file a written request for review with the President within thirty (30) days following receipt of the Step 1 decision by the grievant, if self-represented, or by the grievant's representative.

b. Thirty (30) days will be determined by a date stamp affixed by the office receiving the request for review, if the request is hand delivered; or by the date recorded on the fax by the recipient's fax machine, if the request is filed by fax; or by the postmark, if the request is mailed. The office receiving the request for review will send a copy of the date stamped document to the grievant's representative within three (3) working days.

c. The President or representative, who is not the direct supervisor of the Step 1 representative, and the grievant, if self-represented, or the grievant' s representative will meet for the purpose of reviewing the matter no later than thirty (30) days following receipt of the request for review.

(3) Decision.

a. The President or representative will issue a written decision, stating the reasons for the decision, to the grievant, if self-represented, or to grievant's Step 2 representative and to the UFF (if the grievant is not represented by the UFF) within thirty (30) days following the conclusion of the review meeting.

b. Thirty (30) days will be determined by a date stamp affixed by the office receiving the decision, if the decision is hand delivered, or by the postmark, if the decision is mailed.

c. The grievant, if self-represented, or the grievant's Step 2 representative will send a copy of the date stamped document to the President or representative within three (3) working days.

d. In the absence of an agreement to extend the period for issuing the Step 2 decision, the UFF may proceed to Step 3 if the grievant, if self-represented, or the grievant's Step 2 representative has not received the written decision by the end of the 30th day following the conclusion of the final Step 2 meeting.

(g) Step 3. Arbitration

(1) Filing. If the grievance has not been satisfactorily resolved at Step 2, the UFF may, upon request of the grievant, proceed to arbitration by filing a written notice of the intent to do so.

a. Notice of intent to proceed to arbitration will be filed with the President or representative within thirty (30) days after receipt of the Step 2 decision and will be signed by the grievant and the State UFF President or the UFF Director of Arbitrations.

b. Thirty (30) days will be determined by a date stamp affixed by the office receiving the notice, if the notice is hand delivered; or by the date recorded on the fax by the recipient's fax machine, if the notice is filed by fax; or by the postmark, if the notice is mailed.

c. The office receiving the notice will send a copy of the date stamped document to the grievant, if self-represented, or to the grievant's Step 2 representative within three (3) working days.

d. A thirty (30) day extension for filing a notice of intent to proceed to arbitration may be granted by mutual agreement between the parties.

e. The parties will arbitrate only the issues submitted on the initial grievance form, including any amendment made pursuant to section 22.S(b)(2). The parties will make every attempt to narrow the issues prior to arbitration.

f. The grievance may be withdrawn by the grievant or by the State UFF President or UFF Director of Arbitrations at any point during Step 3.

(2) Selection of Arbitrator.

a. Representatives of the University and the UFF will meet within ninety (90) days after the execution of this Agreement in order to select an Arbitration Panel of up to nine (9) members.

b. Within fourteen (14) days after the filing of a notice of intent to proceed to arbitration, representatives of the University and the UFF will meet to select an arbitrator from the Panel.

c. The parties may, by mutual agreement, select as an arbitrator an individual who is not a member of the Arbitration Panel.

d. Selection from the Arbitration Panel will be by mutual agreement or by alternately striking names from the Arbitration Panel list until one (1) name remains.

e. The right of the first choice to strike from the list will be determined by the flip of a coin.

f. If the parties are unable to agree to a Panel of arbitrators, the selection and assignment of an arbitrator will proceed under the normal rules of the American Arbitration Association ("AAA").

g. If the parties are unable to agree upon which of the nominees, from a panel provided by the AAA, will serve as arbitrator, then the arbitrator will be chosen by each party alternately striking names and the name remaining will be the arbitrator.

(3) Jurisdiction.

✓ may not must

a. In any arbitration proceeding wherein a question concerning the arbitrator's jurisdiction over the grievance is raised, the decision about jurisdiction will be separated from the substantive issue(s).

b. Whenever possible, the question of jurisdiction will be determined by the means of a hearing conducted before an arbitrator by a conference call.

c. The arbitrator will rule upon the jurisdictional issues within ten (10) days of the hearing.

d. If the issue is judged to be arbitral, an arbitrator will be selected to hear the substantive issue(s) in accordance with the provisions of section 22.5(g)(2).

e. The parties may by mutual agreement choose the same arbitrator to rule on the question of arbitrability and on the substantive issues.

(4) Authority of the Arbitrator.

a. The arbitrator will have no authority to add to, subtract from, alter, change, or modify any of the provisions of this Agreement. Arbitration will be confined solely to the application and/or interpretation of this Agreement and the precise issue(s) submitted for arbitration. The arbitrator will refrain from issuing any statements of opinion or conclusions not essential to the determination of the issue(s) submitted.

b. The arbitrator's decision will address itself solely to the issue or issues presented and will not impose upon either party any restriction or obligation pertaining to any matter raised in the dispute outside of the submitted issue or issues.

c. Where an administrator has made a judgment involving the exercise of discretion, such as such as decisions regarding tenure or promotion, the arbitrator will not substitute the arbitrator's judgment for that of the administrator, nor will the arbitrator review such decision except for the purpose of determining whether the decision has violated this Agreement.

d. The arbitrator will not render any decision which would require or result in an action in violation of public statutes.

e. If the arbitrator determines that the Agreement has been violated by either party, the arbitrator will direct that party to take appropriate remedial action.

f. An arbitrator may award back salary where the arbitrator determines that the faculty member is not receiving the appropriate salary from the University, but the arbitrator may not award other monetary damages or penalties.

g. The arbitrator may make no award which provides the faculty member compensation greater than would have resulted had there been no violation.

h. If the University's notice that further employment will not be offered to a faculty member is not given on time, the arbitrator may direct the University to renew the appointment only upon a finding that no other remedy is adequate, and that the notice was given so late that (a) the faculty member was deprived of a reasonable opportunity to seek other employment, or (b) the faculty member actually rejected an offer of comparable employment which the individual otherwise would have accepted.

i. An arbitrator's decision awarding employment beyond the sixth (6th) year will not entitle the faculty member to tenure. In such cases, the faculty member will serve during the seventh (7th) year without further right to notice that he or she will not be offered employment thereafter. If a faculty member is reappointed at the direction of an arbitrator, the President or representative may reassign the individual during such reappointment.

j. If an arbitrator determines that the faculty member was not provided an "equitable opportunity" in relation to other faculty members in the same unit/department to meet the required criteria for promotion, tenure, and merit salary increases, as described in section 10.3 of

61

this Agreement, the arbitrator may award additional employment requiring the University to provide the "equitable opportunity" as described in section 10.3 of this Agreement. The arbitrator also may retain jurisdiction for purposes of determining whether the ensuing assignment provides such "equitable opportunity."

(5) Hearing and Decision.

a. The arbitrator will hold the hearing in the city in which the grievant is employed, unless otherwise agreed to by the parties.

b. The hearing will begin within thirty (30) days of the arbitrator's acceptance of selection or as soon as practicable thereafter.

c. Except as modified by the provisions of this Agreement, arbitration proceedings will be conducted in accordance with the rules and procedures of the American Arbitration Association.

d. The arbitrator will be requested to issue his or her decision within thirty (30) days after the conclusion of the testimony, argument, or submission of briefs, whichever is latest.

e. The decision will be in writing and will set forth findings of fact, reasoning, and conclusions on the issues submitted.

f. Except as expressly specified in this Article, the provisions of the Florida Arbitration Code, Chapter 682, Florida Statutes, will not apply.

(6) Effect of Decision. The decision of the arbitrator will be final, conclusive, and binding on all parties to this Agreement, provided that any party can appeal to an appropriate court of law a decision that was rendered by the arbitrator acting outside of or beyond the arbitrator's jurisdiction, pursuant to Chapter 682, Florida Statutes.

(7) Venue. For purposes of venue in any judicial review of an arbitrator's decision issued under this Agreement, the University and the UFF agree that such an appeal will be filed in the courts in Escambia County, Florida, unless both parties specifically agree otherwise in a particular instance. In an action commenced in Escambia County, neither the Board nor the UFF will move for a change of venue based upon the defendant's residence in fact if other than Escambia County.

(8) Fees and Expenses.

a. All fees and expenses of the arbitrator will be shared equally by the University and the UFF. Each party will bear the cost of preparing and presenting its own case.

b. The party desiring a transcript of the arbitration proceedings will provide written notice to the other party of its intention to have a transcript of the arbitration made at least one (1) week prior to the date of the arbitration.

c. The party desiring such transcript will be responsible for scheduling a stenotype reporter to record the proceedings.

d. The party desiring a transcript will be responsible for the fee for the reporter and the cost of obtaining an original transcript and one (1) copy.

e. The requesting party will, at its own expense, photocopy the copy of the transcript received from the reporter and deliver the photocopy to the other party within five (5) working days after receiving the copy of the transcript from the reporter.

(9) Retroactivity. An arbitrator's award may or may not be retroactive as the equities of each case may demand, but in no case will an award be retroactive to a date earlier than thirty (30) days prior to the date the grievance was initially filed in accordance with this Article.

(1O)The UFF may withdraw a grievance at any step of the grievance procedure by filing written notice with the President or representative.

**22.6 Burden of Proof.** In all grievances except grievances involving disciplinary action brought pursuant to Article 17 (Disciplinary Action) the burden of proof will be on the faculty member. In disciplinary grievances, the burden of proof will be on the University.

**22.7 Grievance Representatives.**
(a) The UFF will furnish to the University a list of all persons authorized to act as grievance representatives by the second (2nd) full week of September and will update the list as needed.
(b) The UFF grievance representatives will have the responsibility to meet all classes, office hours, and other duties and responsibilities incidental to the assigned workload. Some of these activities are scheduled to be performed at particular times.
(c) Such representatives will have the right during times outside of hours scheduled for those activities listed above in section 22.7(b) to investigate, consult, and prepare grievance presentations and attend grievance hearings and meetings.
(d) Should any hearings or meetings with the President or representative necessitate rescheduling of assigned duties, the grievant's representative may, with the approval of the appropriate administrator, arrange for the rescheduling of such duties or their coverage by colleagues. Such approval will not be unreasonably withheld.

**22.8 Appearances**
(a) When a faculty member participates during working hours in an arbitration proceeding or in a grievance meeting between the grievant or representative and the University, the faculty member's compensation will be neither reduced nor increased for time spent in those activities.
(b) Prior to participation in any such proceedings, conferences, or meetings, the faculty member will make arrangements acceptable to the appropriate supervisor for the performance of the faculty member's duties. Approval of such arrangements will not be unreasonably withheld.
(c) Time spent in such activities outside regular working hours will not be counted as time worked.

**22.9 Filings and Notification.**
(a) With the exception of Step 1 and Step 2 decisions, all documents required or permitted to be issued or filed pursuant to this Article may be transmitted by personal delivery, fax, United States mail, or any other recognized delivery service EXCEPT electronic mail.
(b) Step 1 and Step 2 decisions will be transmitted to the grievant (if self-represented) or the grievant's representative by personal delivery with written documentation of receipt or by certified mail, return receipt requested.
(c) In the event that any action falls due on a Saturday, Sunday, or holiday (as referred to in section 19.6 of this Agreement), the act will be considered timely if it is accomplished by 5:00 pm on the following business day.
22.10 Precedent. No complaint informally resolved, or grievance resolved at either Step 1 or 2 will constitute a precedent for any purpose unless agreed to in writing by the President or representative and the UFF acting through its President or representative.

**22.11 Processing.**
(a) The filing or pendency of any grievance or arbitration proceedings under this Article will not operate to impede, preclude, or delay the University from taking the action complained of.

(b) Reasonable efforts, including the shortening of time limits when practical, will be made to conclude the processing of a grievance prior to the expiration of the grievant's employment, whether by termination or failure to reappoint. A faculty member with a pending grievance will not continue to be compensated beyond the last date of employment.

(c) The President or representative may refuse consideration of a grievance not filed or processed in accordance with this Article.

22.12 Reprisal. No reprisal of any kind will be made by the University or the UFF against any grievant, any witness, any UFF representative, or any other participant in the grievance procedure for reason of such participation.

22.13 Implementation. Upon resolution of the grievance, the parties will begin to implement the remedy within fourteen (14) days, unless otherwise provided by the award of the arbitrator or by mutual agreement of the parties.

22.14 Records. All written materials pertinent to a grievance will be filed separately from the evaluation file of the grievant or witnesses, except decisions resulting from arbitration or settlement.

22.15 Inactive Grievances. A grievance which has been filed at Step 2 or Step 3 and on which no action has been taken by the grievant or the UFF for ninety (90) days will be deemed withdrawn and resolved in accordance with the decision issued at the prior Step.

22.16 Expedited Grievance Procedure for Conflict of Interest (Section 21.5).

(a) A grievance alleging a violation of Conflict of Interest (Article 21) will be heard at Step 1 by the Provost or representative no more than seven (7) days after it has been filed.

(b) The Provost or representative will issue a Step 1 decision no more than seven (7) days after the Step 1 meeting.

(c) A request for review of the Step 1 decision will be filed using Appendix "D" no more than seven (7) days following the receipt of the Step 1 decision.

(d) The Step 2 meeting will be held no more than seven (7) days after the receipt of Appendix "D," and the Step 2 decision will be issued no more than seven (7) days after the meeting.

(e) A request for arbitration using Appendix "E" will be filed within fourteen (14) days after the receipt of the Step 2 decision.

(f) An arbitrator will be selected by the parties no more than fourteen (14) days following the receipt of Appendix "E."

(g) The arbitrator will issue a memorandum of decision within seven (7) days following the conclusion of the arbitration, to be followed by a written opinion and award in accordance with section 22.5(g)(4).

(h) The University and the UFF will establish a panel of three (3) experienced arbitrators to hear a grievance filed in accordance with the section.

(i) All other provisions of Article 22 will apply to these grievances, except as noted above.

APPENDIX C GRIEVANCE FORM

I.Date Received by the University Administration _____

GRIEVANT                                    GRIEVANCE REPRESENTATIVE

NAME: Mr. Scott Hudson                      NAME: Ms. Cecile M. Scoon, Esq.


CAMPUS MAILING ADDRESSES:

Building 82                                 25 East 8th Street

11000 University Parkway                    Panama City, FL 32401

Pensacola, FL 32514


COLLEGE: College of Arts, Social Sciences and Humanities

DEPT. Theater


OFFICE PHONE: 850-474-2146        OFFICE PHONE: 850-769-7825


If the grievant is represented by the UFF or legal counsel, all University communications should go to the grievant's representative.

Other address to which University mailings pertaining to the grievance will be sent:

> Scott Hudson
> 515 Barcelona St.
> Apartment 3
> Pensacola, FL 32501

II. GRIEVANCE

Article(s) and section(s) of the Agreement allegedly violated:

Statement of grievance (must include date of acts or omissions complained of)

Article 6.2(a) & (b) – Non-Discrimination Policy. This article is violated as Mr. Hudson claims that after he shared that he had some learning disabilities, Mr. Charles Houghton began to treat him differently and adversely by withdrawing financial support for a class that Mr. Hudson taught and by not supporting Mr. Hudson by not requiring another teacher to coteach a class with Mr. Hudson as was stated and promised to Mr. Hudson. Mr. Hudson complained to Mr. Houghton that the other teacher was not showing up to teach and Mr. Houghton expressed surprise, but no corrective action was taken. This left all the work on Mr. Hudson who had to write the syllabus alone at the last minute causing great undue hardship to Mr. Hudson which was made worse by Mr. Hudson's disabilities. Mr. Hudson had informed Mr. Houghton in September 2016 that he was being tested for ADHD. Mr. Hudson has been receiving assistance from a psychologist in working on his learning disability since August 2016.

Mr. Hudson contends that the Notice of Non-Reappointment is also due in part to Mr. Hudson's disability.



**Article 11.4 - Constitutional Rights.** Mr. Hudson contends that his constitutional rights were violated when he was counseled and written up because a student allegedly complained that he had had students wear several layers of clothing  so that they could change costumes during or before class as required by a play that was approved by UWF. In addition, Mr. Hudson was also told that he would not be reappointed because of statements that he made in class although all statements pertained to a play that has graphic imagery and language as was approved by UWF Theater Chair and UWF Dean and Mr. Hudson placed a warning about the graphic nature of the play in the syllabus and announced it again before class.

On or about January 10, 2017, Mr. Hudson was escorted by Mr. Houghton to Dean Brown's office where he was informed of the alleged complaint, but not directly told what he did wrong. Mr. Hudson was never given an opportunity to meet with the student and he was not given an opportunity to defend himself by his chair or dean when he was instructed to turn in his Letter of Resignation.

On January 16, 2017. Mr. Hudson received counseling and a write up with an email with a screenshot of a Facebook post from Mr. Houghton on February 3, 2017 about the alleged complaint, though Mr. Hudson reviewed the attached Facebook post and told Mr. Houghton that the alleged student posting is not a student in his class, and the day of the week referred to was not a day that Mr. Hudson's class met.

We contend the Letter of Non-Reappointment was given in part due to UWF's violation of Mr. Hudson's constitutional rights after permission was granted for graphic statements and classroom actions  and  because of the alleged student complaints.

**Article 13.2(d) – Non-Reappointment Notice.** Mr. Hudson contends that he was not provided factual information as the bases of his non-reappointment as required by this article and fundamental due process and as such he has been harmed in his ability to pursue this grievance.

Remedy sought:

1. Provide reasonable accommodations of Mr. Hudson's disability,
2. Remove counseling and write ups, negative evaluations, and  student complaints,
3. Rescind letter of non-reappointment.
4. Provide letter of reappointment for the next two years,
5. Pay $25,000.00 in compensation,
6. Pay $7,500.00 in attorney's fees.
7. Prevent any retaliation against Mr. Hudson.

### III. AUTHORIZATION

I will be represented in this grievance by (check one-representative must sign on appropriate line):

     UFF          _____

    **_X_** Legal Counsel    _____

    _Myself

I (do) _X___ (do not)_____ want a postponement for up to thirty (30) days to seek informal resolution of this grievance.

I UNDERSTAND AND AGREE THAT BY FILING THIS GRIEVANCE, I WAIVE WHATEVER RIGHTS I MAY HAVE UNDER CHAPTER 1200F THE FLORIDA STATUTES WITH REGARD TO THE MATTERS I HAVE RAISED HEREIN AND UNDER ALL OTHER UNIVERSITY PROCEDURES WHICH MAY BE AVAILABLE TO ADDRESS THESE MATTERS.

This grievance was filed with (check

one): Provost's Office _____

President's Office _____

This grievance was filed on           by (check one)

Personal delivery _____

U. S. Mail (postmark date)

____

Fax _____

_____

Scott Hudson, Grievan:

(Grievant must sign if grievance is to be processed.)

# Peters & Scoon

Attorneys and Counselors at Law

25 East 8th Street  •  Panama City, FL 32401
850.769.7825  •  850.215.0963 (fax)
cmscoon1@knology.net
alvinpeters@knology.net



Alvin L. Peters
Cecile M. Scoon
Also Admitted in Virginia

March 2, 2017
Via: US Mail and email
sbrown4@uwf.edu

Dr. Steven Brown
University of West Florida
11000 University Parkway
Building 11
Pensacola, Florida 32514

Re: Mr. Scott Hudson

Dear Dean Brown:

The February 15, 2017 letter that you provided Mr. Hudson as the reason for his termination does not meet the requirements of due process required by the Collective Bargaining Agreement. The purpose of the Collective Bargaining Agreement is to provide notice so that a party may defend against allegations which are the basis of a termination. Your letter provides absolutely no information to Mr. Hudson for him to defend himself. We request that you revise your letter and state the alleged factual reasons for Mr. Hudson's non-reappointment. We request the new alleged fact-based letter stating reasons for termination on or before March 8, 2017.

Sincerely,

Cecile M. Scoon, Esq.
Attorney for
Mr. Scott Hudson

Exhibit
9

Exhibit 3

Business Matters  •  Family Law  •  Personal Injury  •  Wrongful Death  •  Employment Law  •  Criminal Defense



University of
**West Florida**

**College of Arts, Social Sciences
and Humanities**
11000 University Parkway
Pensacola, FL 32514-5750

February 15, 2017

Mr. Scott Hudson
Department of Theatre
University of West Florida
Building 82, Room 291
Pensacola, FL 32514

Dear Mr. Hudson,

On January 23, 2017 you were provided with a letter advising that you were being non-reappointed to the position of Assistant Professor in the Department of Theatre at the University of West Florida. The letter was sent in accordance with Section 13.2 (a) of the UFF-UWF Collective Bargaining Agreement. By letter dated February 7, 2017, and in accordance with section 13.2{d) of the Collective Bargaining Agreement, you requested a written statement of the basis of the decision to non-reappoint.

This present letter is in response to your request. The basis for the decision of non-reappointment was maintenance of the best interest of the university and alignment with the mission of the institution.

Best wishes,

Steven F. Brown, Dean
College of Arts, Social Sciences and Humanities

cc:     Dr. George Ellenberg, Interim Provost and Vice President for Academic Affairs
        Mr. Charles Houghton, Chair, Department of Theatre

Ex 4

Phone **850.474.3340** Fax **850.474.2032**
Web uwf.edu/cassh
An Equal Opportunity/Equal Access Institution

*faxed + emailed & mailed 30 Oct 17*

UNIVERSITY OF WEST FLORIDA
Board of Trustees/United Faculty of Florida
**APPENDIX E**
**NOTICE OF ARBITRATION**

**DATE OF RECEIPT BY PRESIDENT'S OFFICE:**

This notice was filed with the President's Office by (check one):

　　　　Personal Delivery

　　　　U. S. Mail (postmark date)　✓ *30 Oct 2017*

　　　　Fax　✓

The United Faculty of Florida hereby gives notice of its intent to proceed to arbitration in connection with the Step 2 decision of the President's office of the University of West Florida dated *29 September 2017* and received by the ~~UFF State Office on~~ *grievant's counsel on 1 October 2017* _____ in this grievance of:

　　NAME: *Scott Hudson*

　　BOT FILE NO: *Grievance FC 2017 - 01*

The following statement of issues(s) before the Arbitrator is proposed:

*See Issues in paragraph II of Attached Grievance*

*N/A* ~~(Signature of the UFF President or Director of Arbitrations)~~ *Cecil W Scott + attorney for Scott Hudson*

I hereby authorize UFF to proceed to arbitration with my grievance. I also authorize UFF and the Board of Trustees or its representatives to use, during the arbitration proceedings, copies of any materials in my evaluation file pertinent to this grievance and to furnish copies of the same to the arbitrator.

_____
Scott Hudson, Grievant

*Ex 5*

FC2017-01

## APPENDIX C GRIEVANCE FORM

I.Date Received by the University Administration_____

| GRIEVANT | GRIEVANCE REPRESENTATIVE |
|---|---|

NAME: Mr. Scott Hudson                 NAME: Ms. Cecile M. Scoon, Esq.

**CAMPUS MAILING ADDRESSES:**
Building 82                                    25 East 8th Street
11000 University Parkway              Panama City, FL 32401
Pensacola, FL 32514

**COLLEGE:** College of Arts, Social Sciences and Humanities

**DEPT.** Theater

OFFICE PHONE: 850-474-2146              OFFICE PHONE: 850-769-7825

If the grievant is represented by the UFF or legal counsel, all University communications should go to the grievant's representative.

Other address to which University mailings pertaining to the grievance will be sent:

> Scott Hudson
> 515 Barcelona St.
> Apartment 3
> Pensacola, FL 32501

## II. GRIEVANCE

Article(s) and section(s) of the Agreement allegedly violated:

Statement of grievance (must include date of acts or omissions complained of)

**Article 6.2(a) & (b) – Non-Discrimination Policy.** This article is violated as Mr. Hudson claims that after he shared that he had some learning disabilities, Mr. Charles Houghton began to treat him differently and adversely by withdrawing financial support for a class that Mr. Hudson taught and by not supporting Mr. Hudson by not requiring another teacher to coteach a class with Mr. Hudson as was stated and promised to Mr. Hudson. Mr. Hudson complained to Mr. Houghton that the other teacher was not showing up to teach and Mr. Houghton expressed surprise, but no corrective action was taken. This left all the work on Mr. Hudson who had to write the syllabus alone at the last minute causing great undue hardship to Mr. Hudson which was made worse by Mr. Hudson's disabilities. Mr. Hudson had informed Mr. Houghton in September 2016 that he was being tested for ADHD. Mr. Hudson has been receiving assistance from a psychologist in working on his learning disability since August 2016.

Mr. Hudson contends that the Notice of Non-Reappointment is also due in part to Mr. Hudson's disability.

**Article 11.4 - Constitutional Rights.** Mr. Hudson contends that his constitutional rights were violated when he was counseled and written up because a student allegedly complained that he had had students wear several layers of clothing  so that they could change costumes during or before class as required by a play that was approved by UWF. In addition, Mr. Hudson was also told that he would not be reappointed because of statements that he made in class although all statements pertained to a

play that has graphic imagery and language as was approved by UWF Theater Chair and UWF Dean and Mr. Hudson placed a warning about the graphic nature of the play in the syllabus and announced it again before class.

On or about January 10, 2017, Mr. Hudson was escorted by Mr. Houghton to Dean Brown's office where he was informed of the alleged complaint, but not directly told what he did wrong. Mr. Hudson was never given an opportunity to meet with the student and he was not given an opportunity to defend himself by his chair or dean when he was instructed to turn in his Letter of Resignation.

On January 16, 2017. Mr. Hudson received counseling and a write up with an email with a screenshot of a Facebook post from Mr. Houghton on February 3, 2017 about the alleged complaint, though Mr. Hudson reviewed the attached Facebook post and told Mr. Houghton that the alleged student posting is not a student in his class, and the day of the week referred to was not a day that Mr. Hudson's class met.

We contend the Letter of Non-Reappointment was given in part due to UWF's violation of Mr. Hudson's constitutional rights after permission was granted for graphic statements and classroom actions and because of the alleged student complaints.

Article 13.2(d) – Non-Reappointment Notice. Mr. Hudson contends that he was not provided factual information as the bases of his non-reappointment as required by this article and fundamental due process and as such he has been harmed in his ability to pursue this grievance.

Remedy sought:
1. Provide reasonable accommodations of Mr. Hudson's disability,
2. Remove counseling and write ups, negative evaluations, and student complaints,
3. Rescind letter of non-reappointment.
4. Provide letter of reappointment for the next two years,
5. Pay $25,000.00 in compensation,
6. Pay $7,500.00 in attorney's fees.
7. Prevent any retaliation against Mr. Hudson.
8.

## III. AUTHORIZATION

I will be represented in this grievance by (check one-representative must sign on appropriate line):

UFF _____

**X** Legal Counsel _____

_Myself

I (do) **X** ___ (do not) ____ want a postponement for up to thirty (30) days to seek informal resolution of this grievance.

I UNDERSTAND AND AGREE THAT BY FILING THIS GRIEVANCE, I WAIVE WHATEVER RIGHTS I MAY HAVE UNDER CHAPTER 1200F THE FLORIDA STATUTES WITH REGARD TO THE MATTERS I HAVE RAISED HEREIN AND UNDER ALL OTHER UNIVERSITY PROCEDURES WHICH MAY BE AVAILABLE TO ADDRESS THESE MATTERS.

This grievance was filed with (check

one): Provost's Office __✓__

President's Office _____

This grievance was filed on                    by (check one)

Personal delivery __✓__

U. S. Mail (postmark date)

____

Fax _____

_____

Scott Hudson, Grievant

(Grievant must sign if grievance is to be processed.)



*rec'd*

**Office of the General Counsel**
11000 University Parkway
Pensacola, FL 32514-5750

December 20, 2017

Ms. Cecile M. Scoon, Esq.
Peters & Scoon
25 East 8th Street
Panama City, FL 43401

Re: Scott Hudson

Dear Ms. Scoon:

This letter is sent in response to the telephone call received from Brittney of your office yesterday by the University President's office.  Brittney was seeking to confirm that the University received a grievance submitted by your office on October 30, 2017.

The University received a facsimile from your office on October 30, 2017 containing six pages, including a Notice of Arbitration, [Appendix E], of the UFF-UWF Collective Bargaining Agreement. (Copy attached).  Article 22.5(g)(1) of the UFF-UWF Collective Bargaining Agreement ("CBA") limits the right to file a Notice of Intent to Proceed to Arbitration to the UFF.  It also requires the Notice of Arbitration to be signed by the "State UFF President or the UFF Director of Arbitrations."   The Notice of Arbitration [Appendix E] submitted on behalf of Mr. Hudson on October 30, 2017, was not filed by the UFF and was not signed by either the UFF State President or the UFF Director of Arbitrations.  Therefore, the Notice of Arbitration [Appendix E] submitted by Mr. Hudson did not meet the requirements of Article 22.5(g)(1) of the CBA.

Pursuant to Article 22.10(c), the University President or representative may refuse consideration of a grievance not filed or processed in accordance with Article 22.  The

Exhibit 6

Phone **850.474.3420** Fax **850.857.6058**
Web **uwf.edu/GeneralCounsel**
An Equal Opportunity/Equal Access Institution

University declines to consider the Notice of Arbitration [Appendix E] filed on behalf of Mr. Hudson on October 30, 2017, because it was not filed in accordance with the requirements of Article 22 of the CBA.


Sincerely,

Anita Schonberger
Deputy General Counsel


Cc:   Dr. George Ellenberg, Provost


Attachment: six page facsimile
1) Fax cover sheet (1 page)
2) Request for Review of Step 1 Decision (page 2) (1 page)
3) Appendix E, of the UFF-UWF Collective Bargaining Agreement, Notice of Arbitration (1 page), and
4) Appendix C, Grievance Form, signed by Mr. Hudson, numbered FC 2017-01 (3 pages).

**WOW! Webmail**   ·   **cmscoon1@knology.net**

## Re: Hudson vs UWF grievance

**From :** Ramie Gougeon <rgougeon@uwf.edu>      Sat, Sep 16, 2017 09:32 AM

**Subject :** Re: Hudson vs UWF grievance

**To :** Cecile Scoon <cmscoon1@knology.net>,
cmscoon2@knology.net

Ms. Scoon,
Regrettably, given my responsibilities as Grievance Coordinator, I cannot speak about his case as Mr. Hudson is not a member of UFF.
With regards,
rg

On Thu, Sep 14, 2017 at 5:02 PM, Cecile Scoon <u>cmscoon1@knology.net</u> wrote:
Hello Dr. Gougeon,

Do you have a few minutes in the next few days when I can speak with you about Scott Hudson's case?

Thank you,

Cecile Scoon, Esquire
Peters & Scoon
Attorneys at Law
25 East 8th St
Panama City, FL 32401
<u>850-769-7825</u>

Please reply to both <u>cmscoon2@knology.net</u> and <u>cmscoon1@knology.net</u> when sending or replying to an email. Thank you.

This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521, is legally privileged, and may contain attorney-client or attorney opinion work product information. Unauthorized review, use, disclosure or distribution is strictly prohibited. If you are not the intended recipient, please contact the sender at (850) 769-7825, or reply by email and destroy all copies of the original message. Thank you.

--

*Ramie A. Gougeon, Ph.D., RPA*
Associate Professor, Department of Anthropology
University of West Florida
850.474.2831

Ex 7

**WOW! Webmail**                                                        **cmscoon1@knology.net**

---

## RE: Hudson vs UWF grievance

---

**From :** Tom Wazlavek <Tom.Wazlavek@floridaea.org>              Sun, Oct 01, 2017 11:17 AM

**Subject :** RE: Hudson vs UWF grievance

**To :** Cecile Scoon <cmscoon1@knology.net>

Typo – 850-375-2898

**From:** Cecile Scoon [mailto:cmscoon1@knology.net]
**Sent:** Sunday, October 01, 2017 12:10 PM
**To:** Wazlavek, Tom <Tom.Wazlavek@floridaea.org>
**Cc:** Ramie Gougeon <rgougeon@uwf.edu>; cmscoon2@knology.net
**Subject:** Re: Hudson vs UWF grievance

Will do. Thank you Tom.

Cecile

Cecile Scoon, Esquire
Peters & Scoon
Attorneys at Law
25 East 8th St
Panama City, FL 32401
850-769-7825

Please reply to both cmscoon2@knology.net and cmscoon1@knology.net when sending or replying
to an email. Thank you.

This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521, is legally
privileged, and may contain attorney-client or attorney opinion work product information.
Unauthorized review, use, disclosure or distribution is strictly prohibited. If you are not the intended
recipient, please contact the sender at (850) 769-7825, or reply by email and destroy all copies of
the original message. Thank you.

---

**From:** "Tom Wazlavek" <Tom.Wazlavek@floridaea.org>
**To:** "Ramie Gougeon" <rgougeon@uwf.edu>, "Cecile Scoon" <cmscoon1@knology.net>,
cmscoon2@knology.net
**Sent:** Sunday, October 1, 2017 9:12:06 AM
**Subject:** RE: Hudson vs UWF grievance

Cecile:

Call me at 850-374-2898 tomorrow morning after 11 am.

Best,

**WOW! Webmail**                                                    **cmscoon1@knology.net**

---

### Re: Notice of intent to file grievance Hudson

---

**From :** Ramie Gougeon <rgougeon@uwf.edu>                    Mon, Oct 30, 2017 08:13 PM
**Subject :** Re: Notice of intent to file grievance Hudson
**To :** Cecile Scoon <cmscoon1@knology.net>

Got that word from Tom, too! Thanks for checking on that. I'd not want to derail Scott's grievance on a technicality!
With regards,
Ramie

On Oct 30, 2017, at 18:09, Cecile Scoon <cmscoon1@knology.net> wrote:

> Thank you! I got that from the form E also. Wazlavek says that i can cross that part out. Let me know what you find.
>
> Cecile/s/
>
>
> Cecile Scoon, Esquire
> Peters & Scoon
> Attorneys at Law
> 25 East 8th St
> Panama City, FL 32401
> 850-769-7825
>
> Please reply to both cmscoon2@knology.net and cmscoon1@knology.net when sending or replying to an email. Thank you.
>
> This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521, is legally privileged, and may contain attorney-client or attorney opinion work product information. Unauthorized review, use, disclosure or distribution is strictly prohibited. If you are not the intended recipient, please contact the sender at (850) 769-7825, or reply by email and destroy all copies of the original message. Thank you.

---

**From:** "Ramie Gougeon" <rgougeon@uwf.edu>
**To:** "Cecile Scoon" <cmscoon1@knology.net>
**Sent:** Monday, October 30, 2017 5:21:36 PM
**Subject:** Re: Notice of intent to file grievance Hudson

That is curious. I can't imagine why I need to sign. Let me look into that. Will get an answer to you asap.

On Oct 30, 2017, at 16:41, Cecile Scoon <cmscoon1@knology.net> wrote:

Hello Dr. Gougeon. Do I need your signature on the form for intent to file a grievance although you have not been able to be involved up to this point? I was surprised to see that in the rules. Please contact me today. 850-319-1975

Thank you,

Cecile M. Scoon/s/

Cecile Scoon, Esquire
Peters & Scoon
Attorneys at Law
25 East 8th St
Panama City, FL 32401
850-769-7825

Please reply to both cmscoon2@knology.net and cmscoon1@knology.net when sending or replying to an email. Thank you.

This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521, is legally privileged, and may contain attorney-client or attorney opinion work product information. Unauthorized review, use, disclosure or distribution is strictly prohibited. If you are not the intended recipient, please contact the sender at (850) 769-7825, or reply by email and destroy all copies of the original message. Thank you.